# EXHIBIT A

**Defendants' Notice of Removal**

SPS

COMMONWEALTH OF VIRGINIA
CIRCUIT COURT OF FAIRFAX COUNTY
4110 CHAIN BRIDGE ROAD
FAIRFAX, VIRGINIA 22030
703-691-7320
(Press 3, Press 1)

Lawrence and Louis Company vs. Truist Bank

CL-2021-0017025

TO:     Truist Bank

SUMMONS – CIVIL ACTION

The party upon whom this summons and the attached complaint are served is hereby notified
that unless within 21 days after such service, response is made by filing in the Clerk's office
of this Court a pleading in writing, in proper legal form, the allegations and charges may be
taken as admitted and the court may enter an order, judgment or decree against such party
either by default or after hearing evidence.

APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.

Done in the name of the Commonwealth of Virginia, on January 20, 2022.

JOHN T. FREY, CLERK

By: _____
          Deputy Clerk

Plaintiff's Attorney:  Kristi Cahoon Kelly

SPS

V I R G I N I A:

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

## PROOF OF SERVICE

Lawrence and Louis Company
        Plaintiff
VS

Truist Bank
        Defendant

CL-2021-0017025
Subtype:  Summons & Complaint
Serve: Truist Bank

STATE OF_____

CITY/COUNTY OF_____, to wit:

      This day _____

personally appeared before the undersigned Notary Public in and for the City/County and State

aforesaid, and, having been first duly sworn according to law, deposes and states as follows:  that

he/she is not a party to, or otherwise interested in, the subject matter in controversy in the within

cause, that he/she is over the age of 18 years; that on the ____ day of _____, 20___, at

_____ o'clock ____.m. he/she served the within Complaint,  in person, on the Defendant

_____ at_____

_____

_____ and the Defendant  is / is not  a

resident of the State of Virginia.

                                                _____
                                            AFFIANT                TITLE

      Subscribed and sworn to before me in my City/County and State aforesaid, this

_____ day of _____, 20_____.

                                Notary ID #: _____

_____
          NOTARY PUBLIC               My Commission expires:_____

COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. 2021 17025
(CLERK'S OFFICE USE ONLY)

Fairfax County .......... Circuit Court

Lawrence and Louis Company d/b/a Hidden Oasis Salon    v./In re:    Truist Bank
PLAINTIFF(S)                                                          DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**
Subsequent Actions
[ ] Claim Impleading Third Party Defendant
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Counterclaim
    [ ] Monetary Damages
    [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
Business & Contract
[ ] Attachment
[ ] Confessed Judgment
[x] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
Property
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Eschentment
[ ] Establish Boundaries
[ ] Landlord/Tenant
    [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
Tort
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[x] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
    [ ] ABC Board
    [ ] Board of Zoning
    [ ] Compensation Board
    [ ] DMV License Suspension
    [ ] Employee Grievance Decision
    [ ] Employment Commission
    [ ] Local Government
    [ ] Marine Resources Commission
    [ ] School Board
    [ ] Voter Registration
    [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
    [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
    [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
    [ ] Complaint – Contested*
    [ ] Complaint – Uncontested*
    [ ] Counterclaim/Responsive Pleading
    [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
    [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
    [ ] Guardian/Conservator
    [ ] Standby Guardian/Conservator
    [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
    [ ] Impress/Declare/Create
    [ ] Reformation
[ ] Will (select one)
    [ ] Construe
    [ ] Contested

**MISCELLANEOUS**
[ ] Amend Death Certificate
[ ] Appointment (select one)
    [ ] Church Trustee
    [ ] Conservator of Peace
    [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
    [ ] Reinstatement pursuant to § 46.2-427
    [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
    [ ] Correct Erroneous State/Local
    [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[x] Other (please specify)
    Violation of VA. Code §§ 8.4A-202, 8.4A-204-4

[x] Damages in the amount of $ 160,000.00 .......... are claimed.

12/9/2021
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [x] ATTORNEY FOR   [x] PLAINTIFF
                                     [ ] DEPENDANT

Kristi C. Kelly
PRINT NAME
3925 Chain Bridge Rd, Suite 2020, Fairfax, VA 22030
ADDRESS/TELEPHONE NUMBER OF SIGNATOR
703-424-7570
kkelly@kellyguzzo.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

VIRGINIA:

FILED
CIVIL INTAKE
2021 DEC 13  PM 5: 17
CLERK, CIRCUIT COURT
FAIRFAX, VA

## IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

LAWRENCE AND LOUIS COMPANY          :
d/b/a HIDDEN OASIS SALON,            :
                                      :
          Plaintiff.                  :
                                      :          2021   17025
v.                                    :     Civil No. _____
                                      :
TRUIST BANK.                          :
                                      :
          Defendant.                  :

## COMPLAINT

Plaintiff Lawrence and Louis Company d/b/a Hidden Oasis Salon. by counsel. files this Complaint against Defendant Truist Bank ("Truist") and alleges as follows:

## PRELIMINARY STATEMENT

1.      This action stems from a fraudulent scheme through which a fraudster hacked Plaintiff's online Truist account and, through six separate transactions, wired approximately $60.000.00 from Plaintiff's account without Plaintiff's authorization.

2.      Plaintiff, a small business, immediately notified Truist of the fraudulent activity. Then, following intermittent communications and a slow drip of information. Truist denied Plaintiff relief because. according to Truist. Plaintiff is responsible for all unauthorized wire transactions under Truist's amalgamation of banking agreements. Instead of conducting a fulsome investigation. Truist accused Plaintiff—wrongly---of supplying its online banking credentials to the fraudster.

3.      Despite Truist's rejection. its agreements—as applied under Article 4A of the Uniform Commercial Code—do not shift liability to Plaintiff. *First.* Plaintiff never agreed to the security procedures that ostensibly applied at the time of the wire fraud. *Second.* the security

procedures were not "commercially reasonable," as is required under Article 4A. And *third*, Truist executed the wire transfers in the absence of good faith.

4.      Plaintiff, therefore, seeks a refund of the lost funds and interest under Virginia Code §§ 8.4A-402 and 8.4A-404, as well as additional damages under tort and breach of contract claims.

## JURISDICTION & VENUE

5.      The Circuit Court for Fairfax County has personal jurisdiction over Truist pursuant to Va. Code § 8.01-328.1(1) & (3).

6.      The Circuit Court for Fairfax County is the proper venue for this action as the acts giving rise to Plaintiff's causes of action occurred in Fairfax County.

## PARTIES

7.      Plaintiff is a small business incorporated in Fairfax County.

8.      Truist is a foreign corporation registered to do business in Virginia. It has branch locations throughout the Commonwealth, including in Fairfax County.

## FACTS

### *The Unauthorized Wire Transfers*

9.      On or about October 20, 2021, through means unknown to Plaintiff, a fraudster gained remote access to Plaintiff's online Truist account.

10.     That day, the fraudster transferred nearly $30,000.00 from Plaintiff's account via three separate wire transactions ranging in amounts from $8,100.00 to $9,880.00.

11.     The following day, the fraudster effectuated three more wire transactions totaling nearly $30,000.00. This time, the amounts ranged from $7,800.00 to $11,500.00.

12.     Upon information and belief, the fraudster made at least one of the unauthorized transactions to another Truist account.

13.     Plaintiff discovered the approximately $60,000.00 loss on October 21, 2021.

2

14.     After spending hours attempting to contact Truist via telephone on October 21, Plaintiff appeared in person at Truist's Alexandria, Virginia branch the following day.

15.     Truist advised Plaintiff that it would do everything it could to stop the funds from reaching the fraudster(s).

16.     After Truist made Plaintiff believe that the fraud could and would be stopped, Plaintiff made no effort to contact the beneficiary banks (i.e., the fraudster's banks) itself. In fact, Truist did not inform Plaintiff of the identity of those banks or financial institutions.

17.     Truist updated Plaintiff via letter on November 26, 2021—over a month after the fraud took place.

18.     That letter advised Plaintiff that four of the transactions were not stopped and that the fraudster had successfully obtained the wired funds.

19.     Truist further represented that it was waiting to hear from "the other financial institutions" about the remaining two wire transactions, which—again—were requested by the fraudster over a month earlier.

20.     Truist has since apprised Plaintiff that no funds were recovered and that Truist would not refund Plaintiff for its losses.

21.     In the November 26 letter, Truist also suggested, without basis, that Plaintiff provided its online banking information to the fraudster.

22.     Plaintiff, however, did not provide the fraudster with any information sufficient to access Plaintiff's Truist bank account.

23.     Plaintiff does not know how the fraudster gained access.

24.     Truist's letter further advised Plaintiff that Plaintiff was responsible for all losses stemming from the unauthorized wire transactions because Truist's lawyers said so.

3

25. Truist then referenced its 56-page "Online and Mobile Banking for Business Service Agreement" (the "Online Agreement") through a hyperlink.

26. Truist did not identify the sections in the Online Agreement that precluded reimbursement to Plaintiff.

27. Truist did not otherwise explain to Plaintiff why no refund would be made as to any of the fraudulent transactions.

28. Plaintiff had not seen, much less agreed to, the Online Agreement before it received the November 26 letter.

29. In fact, Plaintiff originally banked with Truist's predecessor, Branch Banking & Trust.

30. Any agreements that Plaintiff entered into, therefore, would have been with Branch Banking & Trust.

31. Plaintiff never entered into any agreement pertaining to online wire services.

32. In any event, all Truist agreements available online state that a customer accepts Truist's "Security Procedures" upon "use of the Wire Transfer service."

33. Of course, it was not Plaintiff that used Truist's Wire Transfer service—it was the fraudster.

34. Thus, only the fraudster would have accepted the so-called Security Procedures.

35. Plaintiff is not bound by the fraudster's actions.

36. The fraudster was not Plaintiff's agent.

37. Under no circumstances did Plaintiff agree to Truist's Security Procedures, as is required under Article 4A for Truist to shift liability.

38.     On or about December 3, 2021, Truist credited Plaintiff's account in the amount of $3,971.79.

39.     Truist has not explained the basis for the credit.

40.     Upon information and belief, that credit reflects funds recovered by Truist from the transaction to another Truist account.

**The Relevant Statutory Scheme (Article 4A of the UCC)**

41.     "Under Article 4A, a bank receiving a payment order ordinarily bears the risk of loss of any unauthorized funds transfer." *Patco Construction Co., Inc. v. People's United Bank*, 684 F.3d 197, 208 (1st Cir. 2012). "The bank may shift the risk of loss to the customer in one of two ways, one of which involves the commercial reasonableness of security procedures and one of which does not." *Id.*

42.     "First, the bank may show that the 'payment order received . . . is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.'" *Id.* "But, as the Article 4A commentary explains, '[i]n a very large percentage of cases covered by Article 4A, . . . [c]ommon law concepts of authority of agent to bind principal are not helpful' because the payment order is transmitted electronically and the bank 'may be required to act on the basis of a message that appears on a computer screen.'" *Id.* Thus, "the drafters provided a second way by which a bank may shift the risk of loss and protect itself whether or not the payment order is authorized." *Id.*

43.     As to that second way of shifting a wire transfer loss—which Truist claims to apply to Plaintiff's loss—Section 4A-202 (Va. Code § 8.4A-202) provides:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the

receiving bank is effective as the order of the customer, whether or not authorized, if:

> (a) The security procedure is a commercially reasonable method of providing security against unauthorized payment orders; and

> (b) The bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.

44.     "The definition of security procedure limits the term to a procedure 'established by agreement of a customer and a receiving bank.' The term does not apply to procedures that the receiving bank may follow unilaterally in processing payment orders." Official Commentary to Va. Code § 8.4A-201; *see also Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 617 (8th Cir. 2014) ("A 'security procedure' is a 'procedure established by agreement of a customer and a receiving bank for the purpose of . . . verifying that a payment order . . . is that of the customer.' As this definition makes clear, only security measures 'established by agreement' are considered 'security procedures' for purposes of Article 4A; security measures implemented unilaterally by the bank are irrelevant.").

45.     Thus, the question of whether a "security procedure" is "commercially reasonable" does not come into play unless the "security procedure" was first agreed to by the bank customer.

46.     "The concept of what is commercially reasonable in a given case is flexible." Official Commentary to Va. Code § 8.4A-203. "It is reasonable to require large money center banks to make available state-of-the-art security procedures." *Id.*

6

47.     "'Good faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." Va. Code § 8.4A-105(a)(6). "This two-pronged definition has both a subjective component—honesty in fact—and an objective component—the observance of reasonable commercial standards of fair dealing." *Choice Escrow & Land Title, LLC*, 754 F.3d at 622. "The subjective prong concerns whether the bank accepted the payment order honestly." *Essgeekay Corp. v. TD Bank, N.A.*, No. CV183663ESCLW, 2018 WL 6716830, at *4 (D.N.J. Dec. 19, 2018). "The objective prong concerns whether the bank accepted the payment order in accordance with the security procedures 'in a way that reflects the parties' reasonable expectations as to how those procedures will operate.'" *Id.* "Thus, [a d]efendant must show that its employees accepted and executed the payment orders in a way that comported with [the p]laintiff's 'reasonable expectations, as established by reasonable commercial standards of fair dealing.'" *Id.*

## COUNT ONE:
## VIOLATION OF VA. CODE §§ 8.4A-202, 8.4A-204

48.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

49.     As alleged above, a fraudster gained unauthorized access to Plaintiff's Truist checking account from a remote location.

50.     Through that unauthorized access, the fraudster made six separate wire transactions from Plaintiff's account over two days, totaling approximately $60,000.00.

51.     Upon information and belief, the fraudster was able to do so in the absence of any commercially reasonable security procedure. For example, the fraudster was not required to verify Plaintiff's identity through two-factor authentication or like measures intended to limit fraud.

52.     In any event, Plaintiff did not agree to *any* security procedure that could excuse Truist's execution of the fraudulent wire transactions.

7

53.    Moreover, because Truist executed fraudulent wire transactions in the absence of any agreed-to security procedures or by conforming to its ill-defined Security Procedures, Truist failed to execute the wire transfers in good faith.

54.    Truist, therefore, violated Va. Code § 8.4A-202.

55.    As a result of Truist's violation, Plaintiff lost approximately $60,000.00.

56.    Accordingly, Truist is liable to Plaintiff for that loss plus interest. *See* Va. Code § 8.4A-204 ("[T]he bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.").

## COUNT TWO:
## CONVERSION

57.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

58.    Even after Truist learned of the alleged unauthorized payment orders, it continuously refused to refund to Plaintiff the stolen funds.

59.    Because Plaintiff had an ongoing interest in those funds at all times relevant to the allegations of this Complaint, Truist unlawfully exercised dominion and control over Plaintiff's funds.

60.    Truist, therefore, is liable to Plaintiff for conversion of the stolen funds and any damages flowing from Truist's deprivation, including but not limited to the loss of use of the funds in the operation of Plaintiff's business.

## COUNT THREE:
## BREACH OF CONTRACT

61.    Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

62.     Plaintiff alleges breach of contract in the alternative to its allegation that it never agreed to the terms of the Online Agreement.

63.     Even after Truist learned of the alleged unauthorized payment orders, it refused to refund to Plaintiff the stolen funds.

64.     The Online Agreement provided that Plaintiff would be responsible for unauthorized transactions *only* in the event that Truist complied with its Security Procedures.

65.     Even though Truist did not comply with its Security Procedures in permitting the fraudster to effectuate the unauthorized wire transactions, Truist continuously refused to return to Plaintiff funds that Plaintiff had entitlement to under the Online Agreement.

66.     Truist, therefore, is liable to Plaintiff for breach of contract and any damages flowing from Truist's breach, including but not limited to the loss of use of the funds in the operation of Plaintiff's business.

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Truist for: (1) damages in the amount of $60,000.00 plus interest; (2) consequential damages in the amount of $100,000.00; and (3) such other relief the Court deems proper.

Respectfully submitted,

**LAWRENCE AND LOUIS COMPANY d/b/a HIDDEN OASIS SALON**

By:_____

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
J. Patrick McNichol, Esq. VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
(703) 424-7570
(703) 591-0167 Facsimile

9

Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email : pat@kellyguzzo.com

*Counsel for Plaintiff*

10